1   Sandra A. Edwards (SBN 154578)
    sedwards@winston.com
2   WINSTON & STRAWN LLP
    101 California Street
3   San Francisco, CA 94111
    Telephone:    (415) 591-1000
4   Facsimile:    (415) 591-1400

5   Eric W. Bloom (*pro hac vice* forthcoming)
    ebloom@winston.com
6   WINSTON & STRAWN LLP
    1901 L Street NW
7   Washington, DC 20036
    Telephone:    (202) 282-5000
8   Facsimile:    (202) 282-5100

9   M. Imad Khan (*pro hac vice* forthcoming)
    ikhan@winston.com
10  800 Capitol St.
    Houston, TX 77002
11  Telephone:    (713) 651-2600
    Facsimile:    (713) 651-2700

12
    Attorneys for Applicant
13  FOOD DELIVERY HOLDING 12 S.A.R.L.

14
                    UNITED STATES DISTRICT COURT
15
                   NORTHERN DISTRICT OF CALIFORNIA
16

17  *IN RE* APPLICATION OF:                    CASE NO. 3:20-mc-80210

18  FOOD DELIVERY HOLDING 12
    S.A.R.L.,                                  **DECLARATION OF ERIC W. BLOOM IN
19                                             SUPPORT OF ADMINISTRATIVE MOTION
                        Applicant,             TO FILE UNDER SEAL APPLICANT FOOD
20                                             DELIVERY HOLDING 12 S.A.R.L.'S
                                               MEMORANDUM IN SUPPORT OF AN
21  To Issue a Subpoena for the Taking of a    APPLICATION FOR AN ORDER UNDER 28
    Deposition and the Production of           U.S.C. § 1782 TO ISSUE A SUBPOENA TO
22  Documents by GitHub, Inc. in a Foreign     GITHUB, INC. FOR THE TAKING OF A
    Proceeding Pursuant to 28 U.S.C. § 1782,   DEPOSITION AND THE PRODUCTION OF
23                                             DOCUMENTS FOR USE IN A FOREIGN
                        Respondent.            PROCEEDING AND SUPPORTING
24                                             DOCUMENTS

25

26

27

28

I, Eric W. Bloom, declare as follows:

1.      I am a member in good standing of the Bar of the District of Columbia.  I am also admitted to practice before the United States Court of Appeals for the Ninth Circuit.  My *pro hac vice* application for admission to this Court is forthcoming.

2.      I am a partner at the law firm Winston & Strawn LLP and counsel for Applicant Food Delivery Holding 12 S.A.R.L. ("FDH").  The matters stated herein are based on my personal knowledge and, if I am called as a witness, I will testify to them.

3.      **Exhibit A,** attached to the Administrative Motion to File Under Seal, is a true and correct copy of the DIFC-LCIA Arbitration Rules, adopted to take effect for arbitrations commencing on or after October 1, 2016.

4.      FDH's Memorandum in Support of an Application for an Order Under 28 U.S.C. § 1782 to Issue a Subpoena to GitHub, Inc. for the Taking of a Deposition and the Production of Documents for Use in a Foreign Proceeding references and describes materials and information that are subject to the confidentiality obligations imposed on FDH (as party to a DIFC-LCIA arbitration) by the 2016 DIFC-LCIA Arbitration Rules.

5.      **Exhibit 1** is a true and correct copy of FDH's proposed Subpoena to produce documents and to testify at a deposition under FRCP 30(b)(6) deposition, which contains information subject to the confidentiality obligations imposed by the DIFC-LCIA Arbitration Rules.

6.      **Exhibit 2** is a true and correct copy the Statement of Defence and Counterclaims dated May 8, 2020 in the DIFC-LCIA Arbitration, which is subject to the confidentiality obligations imposed by the DIFC-LCIA Arbitration Rules.

7.      **Exhibit 3** is a true and correct copy of the Updated Request for Arbitration dated October 27, 2020 in the DIFC-LCIA Arbitration, which is subject to the confidentiality obligations imposed by the DIFC-LCIA Arbitration Rules.

8.      **Exhibit 6** is a true and correct copy of the Expert Report of Dr. Sandeep Chatterjee, dated May 7, 2020, in the DIFC-LCIA Arbitration, which is subject to the confidentiality obligations imposed by the DIFC-LCIA Arbitration Rules.

9.      **Exhibit 7** is a true and correct copy of the Tribunal's July 6, 2020 Decision on

Disclosures (Excerpts) in the DIFC-LCIA Arbitration, which is subject to the confidentiality obligations imposed by the DIFC-LCIA Arbitration Rules.

10. **Exhibit 8** is a true and correct copy of the Claimant's Response to Respondents' Disclosure Application (Excerpts), dated October 21, 2020, in the DIFC-LCIA Arbitration, which is subject to the confidentiality obligations imposed by the DIFC-LCIA Arbitration Rules.

11. **Exhibit 9** is a true and correct copy of a letter from Winston & Strawn to GitHub, Inc. dated October 14, 2020, which contains information subject to the confidentiality obligations imposed by the DIFC-LCIA Arbitration Rules.

12. **Exhibit 10** is a true and correct copy of an email dated October 27, 2020 from GitHub, Inc. to Winston & Strawn, which contains information subject to the confidentiality obligations imposed by the DIFC-LCIA Arbitration Rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration was executed on the 24th day of November 2020 in Washington, D.C.

Eric W. Bloom

# EXHIBIT A

to Administrative Motion to File Under Seal



# DIFC-LCIA Arbitration Rules

### Table of Contents

Preamble ...................................................................................................................................1

Article 1    Request for Arbitration ....................................................................................1

Article 2    Response ...........................................................................................................2

Article 3    LCIA Court and Registrar ...............................................................................3

Article 4    Written Communications and Periods of Time...........................................4

Article 5    Formation of Arbitral Tribunal ......................................................................4

Article 6    Nationality of Arbitrators ...............................................................................6

Article 7    Party and Other Nominations ........................................................................6

Article 8    Three or More Parties .....................................................................................6

Article 9A   Expedited Formation of Arbitral Tribunal ....................................................7

Article 9B   Emergency Arbitrator......................................................................................7

Article 9C   Expedited Appointment of Replacement Arbitrator ...................................9

Article 10   Revocation and Challenges .............................................................................9

Article 11   Nomination and Replacement .....................................................................10

Article 12   Majority Power to Continue Deliberations .................................................10

Article 13   Communications between Parties and Arbitral Tribunal...........................11

Article 14   Conduct of Proceedings ................................................................................12

Article 15   Written Statements........................................................................................12

Article 16   Seat(s) of Arbitration and Place(s) of Hearing ..........................................14

Article 17   Language(s) of Arbitration ...........................................................................14

Article 18   Legal Representatives ...................................................................................15

Article 19   Oral Hearing(s) ..............................................................................................16

Article 20   Witness(es).....................................................................................................16

Article 21   Expert(s) to Arbitral Tribunal ......................................................................17

Article 22   Additional Powers .........................................................................................17

Article 23   Jurisdiction and Authority ............................................................................19

Article 24   Deposits..........................................................................................................20

Article 25   Interim and Conservatory Measures ...........................................................21

Article 26   Award(s) .........................................................................................................22

Article 27   Correction of Award(s) and Additional Award(s)........................................23

Article 28   Arbitration Costs and Legal Costs ...............................................................24

Article 29   Determinations and Decisions by LCIA Court ............................................25

Article 30   Confidentiality ...............................................................................................25

Article 31   Limitation of Liability.....................................................................................25

Article 32   General Rules .................................................................................................26

Index (in alphabetical order)..................................................................................................27

ANNEX TO THE DIFC-LCIA RULES.........................................................................................28



# DIFC-LCIA Arbitration Rules

**Adopted to take effect for arbitrations commencing on or after 1 October 2016**

**Preamble**

Where any agreement, submission or reference howsoever made or evidenced in writing (whether signed or not) provides in whatsoever manner for arbitration under the rules of or by the DIFC-LCIA Arbitration Centre, the parties thereto shall be taken to have agreed in writing that any arbitration between them shall be conducted in accordance with the DIFC-LCIA Rules as set forth below or such amended version of those Rules as the LCIA Court may hereafter adopt to take effect before the commencement of the arbitration, and that such DIFC-LCIA Rules form part of those parties' agreement (collectively, the "Arbitration Agreement"). These DIFC-LCIA Rules comprise this Preamble, the Articles and the Index, together with the Annex to the DIFC-LCIA Rules and the Schedule of Costs as both from time to time may be separately amended by the LCIA (the "DIFC-LCIA Rules").

**Article 1          Request for Arbitration**

1.1     Any party wishing to commence an arbitration under the DIFC-LCIA Rules (the "Claimant") shall deliver to the Registrar of the DIFC-LCIA Arbitration Centre (the "Registrar") a written request for arbitration (the "Request"), containing or accompanied by:

(i)      the full name and all contact details (including postal address, e-mail address, telephone and facsimile numbers) of the Claimant for the purpose of receiving delivery of all documentation in the arbitration; and the same particulars of the Claimant's legal representatives (if any) and of all other parties to the arbitration;

(ii)     the full terms of the Arbitration Agreement (excepting the DIFC-LCIA Rules) invoked by the Claimant to support its claim, together with a copy of any contractual or other documentation in which those terms are contained and to which the Claimant's claim relates;

(iii)    a statement briefly summarising the nature and circumstances of the dispute, its estimated monetary amount or value, the transaction(s) at issue and the claim advanced by the Claimant against any other party to the arbitration (each such other party being here separately described as a "Respondent");

(iv)    a statement of any procedural matters for the arbitration (such as the arbitral seat, the language(s) of the arbitration, the number of arbitrators, their qualifications and identities) upon which the parties have already agreed in writing or in respect of which the Claimant makes any proposal under the Arbitration Agreement;

(v)     if the Arbitration Agreement (or any other written agreement) howsoever calls for any form of party nomination of arbitrators, the full name, postal address, e-mail address, telephone and facsimile numbers of the Claimant's nominee;

(vi)    confirmation that the registration fee prescribed in the Schedule of Costs has been or is being paid to the DIFC-LCIA Arbitration Centre, without which actual receipt of such payment the



Request shall be treated by the Registrar as not having been delivered and the arbitration as not having been commenced under the Arbitration Agreement; and

(vii) confirmation that copies of the Request (including all accompanying documents) have been or are being delivered to all other parties to the arbitration by one or more means to be identified specifically in such confirmation, to be supported then or as soon as possible thereafter by documentary proof satisfactory to the LCIA Court of actual delivery (including the date of delivery) or, if actual delivery is demonstrated to be impossible to the LCIA Court's satisfaction, sufficient information as to any other effective form of notification.

1.2 The Request (including all accompanying documents) may be submitted to the Registrar in electronic form (as e-mail attachments) or in paper form or in both forms. If submitted in paper form, the Request shall be submitted in two copies where a sole arbitrator is to be appointed, or, if the parties have agreed or the Claimant proposes that three arbitrators are to be appointed, in four copies.

1.3 The Claimant may use, but is not required to do so, the standard electronic form available on-line from the DIFC-LCIA Arbitration Centre's website for DIFC-LCIA Arbitration Centre Requests.

1.4 The date of receipt by the Registrar of the Request shall be treated as the date upon which the arbitration has commenced for all purposes (the "Commencement Date"), subject to the DIFC-LCIA Arbitration Centre's actual receipt of the registration fee.

1.5 There may be one or more Claimants (whether or not jointly represented); and in such event, where appropriate, the term "Claimant" shall be so interpreted under the Arbitration Agreement.

**Article 2        Response**

2.1 Within 28 days of the Commencement Date, or such lesser or greater period to be determined by the LCIA Court upon application by any party or upon its own initiative (pursuant to Article 22.5), the Respondent shall deliver to the Registrar a written response to the Request (the "Response"), containing or accompanied by:

(i) the Respondent's full name and all contact details (including postal address, e-mail address, telephone and facsimile numbers) for the purpose of receiving delivery of all documentation in the arbitration and the same particulars of its legal representatives (if any);

(ii) confirmation or denial of all or part of the claim advanced by the Claimant in the Request, including the Claimant's invocation of the Arbitration Agreement in support of its claim;

(iii) if not full confirmation, a statement briefly summarising the nature and circumstances of the dispute, its estimated monetary amount or value, the transaction(s) at issue and the defence advanced by the Respondent, and also indicating whether any cross-claim will be advanced by the Respondent against any other party to the arbitration (such cross-claim to include any counterclaim against any Claimant and any other cross-claim against any Respondent);



(iv)     a response to any procedural statement for the arbitration contained in the Request under Article 1.1(iv), including the Respondent's own statement relating to the arbitral seat, the language(s) of the arbitration, the number of arbitrators, their qualifications and identities and any other procedural matter upon which the parties have already agreed in writing or in respect of which the Respondent makes any proposal under the Arbitration Agreement;

(v)      if the Arbitration Agreement (or any other written agreement) howsoever calls for party nomination of arbitrators, the full name, postal address, e-mail address, telephone and facsimile numbers of the Respondent's nominee; and

(vi)     confirmation that copies of the Response (including all accompanying documents) have been or are being delivered to all other parties to the arbitration by one or more means of delivery to be identified specifically in such confirmation, to be supported then or as soon as possible thereafter by documentary proof satisfactory to the LCIA Court of actual delivery (including the date of delivery) or, if actual delivery is demonstrated to be impossible to the LCIA Court's satisfaction, sufficient information as to any other effective form of notification.

2.2      The Response (including all accompanying documents) may be submitted to the Registrar in electronic form (as e-mail attachments) or in paper form or in both forms. If submitted in paper form, the Response shall be submitted in two copies where a sole arbitrator is to be appointed, or, if the parties have agreed or the Respondent proposes that three arbitrators are to be appointed, in four copies.

2.3      The Respondent may use, but is not required to do so, the standard electronic form available on-line from the DIFC-LCIA Arbitration Centre's website for DIFC-LCIA Arbitration Centre Responses.

2.4      Failure to deliver a Response within time shall constitute an irrevocable waiver of that party's opportunity to nominate or propose any arbitral candidate. Failure to deliver any or any part of a Response within time or at all shall not (by itself) preclude the Respondent from denying any claim or from advancing any defence or cross-claim in the arbitration.

2.5      There may be one or more Respondents (whether or not jointly represented); and in such event, where appropriate, the term "Respondent" shall be so interpreted under the Arbitration Agreement.

**Article 3        LCIA Court and Registrar**

3.1      The functions of the LCIA Court under the Arbitration Agreement shall be performed in its name by the President of the LCIA Court (or any of its Vice-Presidents, Honorary Vice-Presidents or former Vice-Presidents) or by a division of three or more members of the LCIA Court appointed by its President or any Vice-President (the "LCIA Court").

3.2      The functions of the Registrar under the Arbitration Agreement shall be performed under the supervision of the LCIA Court by the Registrar or any deputy Registrar.



3.3    All communications in the arbitration to the LCIA Court from any party, arbitrator or expert to the Arbitral Tribunal shall be addressed to the Registrar.

**Article 4        Written Communications and Periods of Time**

4.1    Any written communication by the LCIA Court, the Registrar or any party may be delivered personally or by registered postal or courier service or (subject to Article 4.3) by facsimile, e-mail or any other electronic means of telecommunication that provides a record of its transmission, or in any other manner ordered by the Arbitral Tribunal.

4.2    Unless otherwise ordered by the Arbitral Tribunal, if an address has been agreed or designated by a party for the purpose of receiving any communication in regard to the Arbitration Agreement or (in the absence of such agreement or designation) has been regularly used in the parties' previous dealings, any written communication (including the Request and Response) may be delivered to such party at that address, and if so delivered, shall be treated as having been received by such party.

4.3    Delivery by electronic means (including e-mail and facsimile) may only be effected to an address agreed or designated by the receiving party for that purpose or ordered by the Arbitral Tribunal.

4.4    For the purpose of determining the commencement of any time-limit, a written communication shall be treated as having been received by a party on the day it is delivered or, in the case of electronic means, transmitted in accordance with Articles 4.1 to 4.3 (such time to be determined by reference to the recipient's time-zone).

4.5    For the purpose of determining compliance with a time-limit, a written communication shall be treated as having been sent by a party if made or transmitted in accordance with Articles 4.1 to 4.3 prior to or on the date of the expiration of the time-limit.

4.6    For the purpose of calculating a period of time, such period shall begin to run on the day following the day when a written communication is received by the addressee. If the last day of such period is an official holiday or non-business day at the place of that addressee (or the place of the party against whom the calculation of time applies), the period shall be extended until the first business day which follows that last day. Official holidays and non-business days occurring during the running of the period of time shall be included in calculating that period.

**Article 5        Formation of Arbitral Tribunal**

5.1    The formation of the Arbitral Tribunal by the LCIA Court shall not be impeded by any controversy between the parties relating to the sufficiency of the Request or the Response. The LCIA Court may also proceed with the arbitration notwithstanding that the Request is incomplete or the Response is missing, late or incomplete.

5.2    The expression the "Arbitral Tribunal" includes a sole arbitrator or all the arbitrators where more than one.



5.3     All arbitrators shall be and remain at all times impartial and independent of the parties; and none shall act in the arbitration as advocate for or representative of any party. No arbitrator shall advise any party on the parties' dispute or the outcome of the arbitration.

5.4     Before appointment by the LCIA Court, each arbitral candidate shall furnish to the Registrar (upon the latter's request) a brief written summary of his or her qualifications and professional positions (past and present); the candidate shall also agree in writing fee-rates conforming to the Schedule of Costs; the candidate shall sign a written declaration stating: (i) whether there are any circumstances currently known to the candidate which are likely to give rise in the mind of any party to any justifiable doubts as to his or her impartiality or independence and, if so, specifying in full such circumstances in the declaration; and (ii) whether the candidate is ready, willing and able to devote sufficient time, diligence and industry to ensure the expeditious and efficient conduct of the arbitration. The candidate shall furnish promptly such agreement and declaration to the Registrar.

5.5     If appointed, each arbitral candidate shall thereby assume a continuing duty as an arbitrator, until the arbitration is finally concluded, forthwith to disclose in writing any circumstances becoming known to that arbitrator after the date of his or her written declaration (under Article 5.4) which are likely to give rise in the mind of any party to any justifiable doubts as to his or her impartiality or independence, to be delivered to the LCIA Court, any other members of the Arbitral Tribunal and all parties in the arbitration.

5.6     The LCIA Court shall appoint the Arbitral Tribunal promptly after receipt by the Registrar of the Response or, if no Response is received, after 35 days from the Commencement Date (or such other lesser or greater period to be determined by the LCIA Court pursuant to Article 22.5).

5.7     No party or third person may appoint any arbitrator under the Arbitration Agreement: the LCIA Court alone is empowered to appoint arbitrators (albeit taking into account any written agreement or joint nomination by the parties).

5.8     A sole arbitrator shall be appointed unless the parties have agreed in writing otherwise or if the LCIA Court determines that in the circumstances a three-member tribunal is appropriate (or, exceptionally, more than three).

5.9     The LCIA Court shall appoint arbitrators with due regard for any particular method or criteria of selection agreed in writing by the parties. The LCIA Court shall also take into account the transaction(s) at issue, the nature and circumstances of the dispute, its monetary amount or value, the location and languages of the parties, the number of parties and all other factors which it may consider relevant in the circumstances.

5.10    The President of the LCIA Court shall only be eligible to be appointed as an arbitrator if the parties agree in writing to nominate him or her as the sole or presiding arbitrator; and the Vice Presidents of the LCIA Court and the Chairman of the LCIA Board of Directors (the latter being ex officio a member of the LCIA Court) shall only be eligible to be appointed as arbitrators if nominated in writing by a party or parties – provided that no such nominee shall



have taken or shall take thereafter any part in any function of the LCIA Court or DIFC-LCIA Arbitration Centre relating to such arbitration.

**Article 6        Nationality of Arbitrators**

6.1    Where the parties are of different nationalities, a sole arbitrator or the presiding arbitrator shall not have the same nationality as any party unless the parties who are not of the same nationality as the arbitral candidate all agree in writing otherwise.

6.2    The nationality of a party shall be understood to include those of its controlling shareholders or interests.

6.3    A person who is a citizen of two or more States shall be treated as a national of each State; citizens of the European Union shall be treated as nationals of its different Member States and shall not be treated as having the same nationality; a citizen of a State's overseas territory shall be treated as a national of that territory and not of that State; and a legal person incorporated in a State's overseas territory shall be treated as such and not (by such fact alone) as a national of or a legal person incorporated in that State.

**Article 7        Party and Other Nominations**

7.1    If the parties have agreed howsoever that any arbitrator is to be appointed by one or more of them or by any third person (other than the LCIA Court), that agreement shall be treated under the Arbitration Agreement as an agreement to nominate an arbitrator for all purposes. Such nominee may only be appointed by the LCIA Court as arbitrator subject to that nominee's compliance with Articles 5.3 to 5.5; and the LCIA Court shall refuse to appoint any nominee if it determines that the nominee is not so compliant or is otherwise unsuitable.

7.2    Where the parties have howsoever agreed that the Claimant or the Respondent or any third person (other than the LCIA Court) is to nominate an arbitrator and such nomination is not made within time or at all (in the Request, Response or otherwise), the LCIA Court may appoint an arbitrator notwithstanding any absent or late nomination.

7.3    In the absence of written agreement between the Parties, no party may unilaterally nominate a sole arbitrator or presiding arbitrator.

**Article 8        Three or More Parties**

8.1    Where the Arbitration Agreement entitles each party howsoever to nominate an arbitrator, the parties to the dispute number more than two and such parties have not all agreed in writing that the disputant parties represent collectively two separate "sides" for the formation of the Arbitral Tribunal (as Claimants on one side and Respondents on the other side, each side nominating a single arbitrator), the LCIA Court shall appoint the Arbitral Tribunal without regard to any party's entitlement or nomination.



8.2    In such circumstances, the Arbitration Agreement shall be treated for all purposes as a written agreement by the parties for the nomination and appointment of the Arbitral Tribunal by the LCIA Court alone.

### Article 9A        Expedited Formation of Arbitral Tribunal

9.1    In the case of exceptional urgency, any party may apply to the LCIA Court for the expedited formation of the Arbitral Tribunal under Article 5.

9.2    Such an application shall be made to the Registrar in writing (preferably by electronic means), together with a copy of the Request (if made by a Claimant) or a copy of the Response (if made by a Respondent), delivered or notified to all other parties to the arbitration. The application shall set out the specific grounds for exceptional urgency requiring the expedited formation of the Arbitral Tribunal.

9.3     The LCIA Court shall determine the application as expeditiously as possible in the circumstances. If the application is granted, for the purpose of forming the Arbitral Tribunal the LCIA Court may abridge any period of time under the Arbitration Agreement or other agreement of the parties (pursuant to Article 22.5).

### Article 9B        Emergency Arbitrator

9.4    Subject always to Article 9.14 below, in the case of emergency at any time prior to the formation or expedited formation of the Arbitral Tribunal (under Articles 5 or 9A), any party may apply to the LCIA Court for the immediate appointment of a temporary sole arbitrator to conduct emergency proceedings pending the formation or expedited formation of the Arbitral Tribunal (the "Emergency Arbitrator").

9.5    Such an application shall be made to the Registrar in writing (preferably by electronic means), together with a copy of the Request (if made by a Claimant) or a copy of the Response (if made by a Respondent), delivered or notified to all other parties to the arbitration. The application shall set out, together with all relevant documentation: (i) the specific grounds for requiring, as an emergency, the appointment of an Emergency Arbitrator; and (ii) the specific claim, with reasons, for emergency relief. The application shall be accompanied by the applicant's written confirmation that the applicant has paid or is paying to the DIFC-LCIA Arbitration Centre the Special Fee under Article 9B, without which actual receipt of such payment the application shall be dismissed by the LCIA Court. The Special Fee shall be subject to the terms of the Schedule of Costs. Its amount is prescribed in the Schedule, covering the fees and expenses of the Emergency Arbitrator and the administrative fees and expenses of the DIFC-LCIA Arbitration Centre, with additional charges (if any) of the LCIA Court. After the appointment of the Emergency Arbitrator, the amount of the Special Fee payable by the applicant may be increased by the LCIA Court in accordance with the Schedule. Article 24 shall not apply to any Special Fee paid to the DIFC-LCIA Arbitration Centre.

9.6    The LCIA Court shall determine the application as soon as possible in the circumstances. If the application is granted, an Emergency Arbitrator shall be appointed by the LCIA Court within



three days of the Registrar's receipt of the application (or as soon as possible thereafter). Articles 5.1, 5.7, 5.9, 5.10, 6, 9C, 10 and 16.2 (last sentence) shall apply to such appointment. The Emergency Arbitrator shall comply with the requirements of Articles 5.3, 5.4 and (until the emergency proceedings are finally concluded) Article 5.5.

9.7    The Emergency Arbitrator may conduct the emergency proceedings in any manner determined by the Emergency Arbitrator to be appropriate in the circumstances, taking account of the nature of such emergency proceedings, the need to afford to each party, if possible, an opportunity to be consulted on the claim for emergency relief (whether or not it avails itself of such opportunity), the claim and reasons for emergency relief and the parties' further submissions (if any). The Emergency Arbitrator is not required to hold any hearing with the parties (whether in person, by telephone or otherwise) and may decide the claim for emergency relief on available documentation. In the event of a hearing, Articles 16.3, 19.2, 19.3 and 19.4 shall apply.

9.8    The Emergency Arbitrator shall decide the claim for emergency relief as soon as possible, but no later than 14 days following the Emergency Arbitrator's appointment. This deadline may only be extended by the LCIA Court in exceptional circumstances (pursuant to Article 22.5) or by the written agreement of all parties to the emergency proceedings. The Emergency Arbitrator may make any order or award which the Arbitral Tribunal could make under the Arbitration Agreement (excepting Arbitration and Legal Costs under Articles 28.2 and 28.3); and, in addition, make any order adjourning the consideration of all or any part of the claim for emergency relief to the proceedings conducted by the Arbitral Tribunal (when formed).

9.9    An order of the Emergency Arbitrator shall be made in writing, with reasons. An award of the Emergency Arbitrator shall comply with Article 26.2 and, when made, take effect as an award under Article 26.8 (subject to Article 9.11). The Emergency Arbitrator shall be responsible for delivering any order or award to the Registrar, who shall transmit the same promptly to the parties by electronic means, in addition to paper form (if so requested by any party). In the event of any disparity between electronic and paper forms, the electronic form shall prevail.

9.10    The Special Fee paid shall form a part of the Arbitration Costs under Article 28.2 determined by the LCIA Court (as to the amount of Arbitration Costs) and decided by the Arbitral Tribunal (as to the proportions in which the parties shall bear Arbitration Costs). Any legal or other expenses incurred by any party during the emergency proceedings shall form a part of the Legal Costs under Article 28.3 decided by the Arbitral Tribunal (as to amount and as to payment between the parties of Legal Costs).

9.11    Any order or award of the Emergency Arbitrator (apart from any order adjourning to the Arbitral Tribunal, when formed, any part of the claim for emergency relief) may be confirmed, varied, discharged or revoked, in whole or in part, by order or award made by the Arbitral Tribunal upon application by any party or upon its own initiative.

9.12    Article 9B shall not prejudice any party's right to apply to a state court or other legal authority for any interim or conservatory measures before the formation of the Arbitration Tribunal;



and it shall not be treated as an alternative to or substitute for the exercise of such right. During the emergency proceedings, any application to and any order by such court or authority shall be communicated promptly in writing to the Emergency Arbitrator, the Registrar and all other parties.

9.13    Articles 3.3, 13.1-13.4, 14.4, 14.5, 16, 17, 18, 22.3, 22.4, 23, 28, 29, 30, 31 and 32 and the Annex shall apply to emergency proceedings. In addition to the provisions expressly set out there and in Article 9B above, the Emergency Arbitrator and the parties to the emergency proceedings shall also be guided by other provisions of the Arbitration Agreement, whilst recognising that several such provisions may not be fully applicable or appropriate to emergency proceedings. Wherever relevant, the LCIA Court may abridge under any such provisions any period of time (pursuant to Article 22.5).

9.14    Article 9B shall not apply if either: (i) the parties have concluded their arbitration agreement before 1 October 2016 and the parties have not agreed in writing to 'opt in' to Article 9B; or (ii) the parties have agreed in writing at any time to 'opt out' of Article 9B.

**Article 9C        Expedited Appointment of Replacement Arbitrator**

9.15    Any party may apply to the LCIA Court for the expedited appointment of a replacement arbitrator under Article 11.

9.16    Such an application shall be made in writing to the Registrar (preferably by electronic means), delivered (or notified) to all other parties to the arbitration; and it shall set out the specific grounds requiring the expedited appointment of the replacement arbitrator.

9.17     The LCIA Court shall determine the application as expeditiously as possible in the circumstances. If the application is granted, for the purpose of expediting the appointment of the replacement arbitrator the LCIA Court may abridge any period of time in the Arbitration Agreement or any other agreement of the parties (pursuant to Article 22.5).

*Article 10        Revocation and Challenges*

10.1    The LCIA Court may revoke any arbitrator's appointment upon its own initiative, at the written request of all other members of the Arbitral Tribunal or upon a written challenge by any party if: (i) that arbitrator gives written notice to the LCIA Court of his or her intent to resign as arbitrator, to be copied to all parties and all other members of the Arbitral Tribunal (if any); (ii) that arbitrator falls seriously ill, refuses or becomes unable or unfit to act; or (iii) circumstances exist that give rise to justifiable doubts as to that arbitrator's impartiality or independence.

10.2    The LCIA Court may determine that an arbitrator is unfit to act under Article 10.1 if that arbitrator: (i) acts in deliberate violation of the Arbitration Agreement; (ii) does not act fairly or impartially as between the parties; or (iii) does not conduct or participate in the arbitration with reasonable efficiency, diligence and industry.



10.3    A party challenging an arbitrator under Article 10.1 shall, within 14 days of the formation of the Arbitral Tribunal or (if later) within 14 days of becoming aware of any grounds described in Article 10.1 or 10.2, deliver a written statement of the reasons for its challenge to the LCIA Court, the Arbitral Tribunal and all other parties. A party may challenge an arbitrator whom it has nominated, or in whose appointment it has participated, only for reasons of which it becomes aware after the appointment has been made by the LCIA Court.

10.4    The LCIA Court shall provide to those other parties and the challenged arbitrator a reasonable opportunity to comment on the challenging party's written statement. The LCIA Court may require at any time further information and materials from the challenging party, the challenged arbitrator, other parties and other members of the Arbitral Tribunal (if any).

10.5    If all other parties agree in writing to the challenge within 14 days of receipt of the written statement, the LCIA Court shall revoke that arbitrator's appointment (without reasons).

10.6    Unless the parties so agree or the challenged arbitrator resigns in writing within 14 days of receipt of the written statement, the LCIA Court shall decide the challenge and, if upheld, shall revoke that arbitrator's appointment. The LCIA Court's decision shall be made in writing, with reasons; and a copy shall be transmitted by the Registrar to the parties, the challenged arbitrator and other members of the Arbitral Tribunal (if any). A challenged arbitrator who resigns in writing prior to the LCIA Court's decision shall not be considered as having admitted any part of the written statement.

10.7    The LCIA Court shall determine the amount of fees and expenses (if any) to be paid for the former arbitrator's services, as it may consider appropriate in the circumstances. The LCIA Court may also determine whether, in what amount and to whom any party should pay forthwith the costs of the challenge; and the LCIA Court may also refer all or any part of such costs to the later decision of the Arbitral Tribunal and/or the LCIA Court under Article 28.

**Article 11        Nomination and Replacement**

11.1    In the event that the LCIA Court determines that justifiable doubts exist as to any arbitral candidate's suitability, independence or impartiality, or if a nominee declines appointment as arbitrator, or if an arbitrator is to be replaced for any reason, the LCIA Court may determine whether or not to follow the original nominating process for such arbitral appointment.

11.2    The LCIA Court may determine that any opportunity given to a party to make any re-nomination (under the Arbitration Agreement or otherwise) shall be waived if not exercised within 14 days (or such lesser or greater time as the LCIA Court may determine), after which the LCIA Court shall appoint the replacement arbitrator without such re-nomination.

**Article 12        Majority Power to Continue Deliberations**

12.1    In exceptional circumstances, where an arbitrator without good cause refuses or persistently fails to participate in the deliberations of an Arbitral Tribunal, the remaining arbitrators jointly may decide (after their written notice of such refusal or failure to the LCIA Court, the parties



and the absent arbitrator) to continue the arbitration (including the making of any award) notwithstanding the absence of that other arbitrator, subject to the written approval of the LCIA Court.

12.2    In deciding whether to continue the arbitration, the remaining arbitrators shall take into account the stage of the arbitration, any explanation made by or on behalf of the absent arbitrator for his or her refusal or non-participation, the likely effect upon the legal recognition or enforceability of any award at the seat of the arbitration and such other matters as they consider appropriate in the circumstances.  The reasons for such decision shall be stated in any award made by the remaining arbitrators without the participation of the absent arbitrator.

12.3    In the event that the remaining arbitrators decide at any time thereafter not to continue the arbitration without the participation of the absent arbitrator, the remaining arbitrators shall notify in writing the parties and the LCIA Court of such decision; and, in that event, the remaining arbitrators or any party may refer the matter to the LCIA Court for the revocation of the absent arbitrator's appointment and the appointment of a replacement arbitrator under Articles 10 and 11.

**Article 13        Communications between Parties and Arbitral Tribunal**

13.1    Following the formation of the Arbitral Tribunal, all communications shall take place directly between the Arbitral Tribunal and the parties (to be copied to the Registrar), unless the Arbitral Tribunal decides that communications should continue to be made through the Registrar.

13.2    Where the Registrar sends any written communication to one party on behalf of the Arbitral Tribunal or the LCIA Court, he or she shall send a copy to each of the other parties.

13.3     Where any party delivers to the Arbitral Tribunal any communication (including statements and documents under Article 15), whether by electronic means or otherwise, it shall deliver a copy to each arbitrator, all other parties and the Registrar; and it shall confirm to the Arbitral Tribunal in writing that it has done or is doing so.

13.4    During the arbitration from the Arbitral Tribunal's formation onwards, no party shall deliberately initiate or attempt to initiate any unilateral contact relating to the arbitration or the parties' dispute with any member of the Arbitral Tribunal or any member of the LCIA Court exercising any function in regard to the arbitration (but not including the Registrar), which has not been disclosed in writing prior to or shortly after the time of such contact to all other parties, all members of the Arbitral Tribunal (if comprised of more than one arbitrator) and the Registrar.

13.5    Prior to the Arbitral Tribunal's formation, unless the parties agree otherwise in writing, any arbitrator, candidate or nominee who is required to participate in the selection of a presiding arbitrator may consult any party in order to obtain the views of that party as to the suitability



of any candidate or nominee as presiding arbitrator, provided that such arbitrator, candidate or nominee informs the Registrar of such consultation.

**Article 14        Conduct of Proceedings**

14.1    The parties and the Arbitral Tribunal are encouraged to make contact (whether by a hearing in person, telephone conference-call, video conference or exchange of correspondence) as soon as practicable but no later than 21 days from receipt of the Registrar's written notification of the formation of the Arbitral Tribunal.

14.2    The parties may agree on joint proposals for the conduct of their arbitration for consideration by the Arbitral Tribunal. They are encouraged to do so in consultation with the Arbitral Tribunal and consistent with the Arbitral Tribunal's general duties under the Arbitration Agreement.

14.3    Such agreed proposals shall be made by the parties in writing or recorded in writing by the Arbitral Tribunal at the parties' request and with their authority.

14.4    Under the Arbitration Agreement, the Arbitral Tribunal's general duties at all times during the arbitration shall include:

(i)      a duty to act fairly and impartially as between all parties, giving each a reasonable opportunity of putting its case and dealing with that of its opponent(s); and

(ii)     a duty to adopt procedures suitable to the circumstances of the arbitration, avoiding unnecessary delay and expense, so as to provide a fair, efficient and expeditious means for the final resolution of the parties' dispute.

14.5    The Arbitral Tribunal shall have the widest discretion to discharge these general duties, subject to such mandatory law(s) or rules of law as the Arbitral Tribunal may decide to be applicable; and at all times the parties shall do everything necessary in good faith for the fair, efficient and expeditious conduct of the arbitration, including the Arbitral Tribunal's discharge of its general duties.

14.6    In the case of an Arbitral Tribunal other than a sole arbitrator, the presiding arbitrator, with the prior agreement of its other members and all parties, may make procedural orders alone.

**Article 15        Written Statements**

15.1    Unless the parties have agreed or jointly proposed in writing otherwise or the Arbitral Tribunal should decide differently, the written stage of the arbitration and its procedural time-table shall be as set out in this Article 15.

15.2    Within 28 days of receipt of the Registrar's written notification of the Arbitral Tribunal's formation, the Claimant shall deliver to the Arbitral Tribunal and all other parties either: (i) its written election to have its Request treated as its Statement of Case complying with this Article 15.2; or (ii) its written Statement of Case setting out in sufficient detail the relevant



facts and legal submissions on which it relies, together with the relief claimed against all other parties, and all essential documents.

15.3    Within 28 days of receipt of the Claimant's Statement of Case or the Claimant's election to treat the Request as its Statement of Case, the Respondent shall deliver to the Arbitral Tribunal and all other parties either: (i) its written election to have its Response treated as its Statement of Defence and (if applicable) Cross-claim complying with this Article 15.3; or (ii) its written Statement of Defence and (if applicable) Statement of Cross-claim setting out in sufficient detail the relevant facts and legal submissions on which it relies, together with the relief claimed against all other parties, and all essential documents.

15.4    Within 28 days of receipt of the Respondent's Statement of Defence and (if applicable) Statement of Cross-claim or the Respondent's election to treat the Response as its Statement of Defence and (if applicable) Cross-claim, the Claimant shall deliver to the Arbitral Tribunal and all other parties a written Statement of Reply which, where there are any cross-claims, shall also include a Statement of Defence to Cross-claim in the same manner required for a Statement of Defence, together with all essential documents.

15.5    If the Statement of Reply contains a Statement of Defence to Cross-claim, within 28 days of its receipt the Respondent shall deliver to the Arbitral Tribunal and all other parties its written Statement of Reply to the Defence to Cross-claim, together with all essential documents.

15.6    The Arbitral Tribunal may provide additional directions as to any part of the written stage of the arbitration (including witness statements, submissions and evidence), particularly where there are multiple claimants, multiple respondents or any cross-claim between two or more respondents or between two or more claimants.

15.7    No party may submit any further written statement following the last of these Statements, unless otherwise ordered by the Arbitral Tribunal.

15.8    If the Respondent fails to submit a Statement of Defence or the Claimant a Statement of Defence to Cross-claim, or if at any time any party fails to avail itself of the opportunity to present its written case in the manner required under this Article 15 or otherwise by order of the Arbitral Tribunal, the Arbitral Tribunal may nevertheless proceed with the arbitration (with or without a hearing) and make one or more awards.

15.9    As soon as practicable following this written stage of the arbitration, the Arbitral Tribunal shall proceed in such manner as has been agreed in writing by the parties or pursuant to its authority under the Arbitration Agreement.

15.10   In any event, the Arbitral Tribunal shall seek to make its final award as soon as reasonably possible following the last submission from the parties (whether made orally or in writing), in accordance with a timetable notified to the parties and the Registrar as soon as practicable (if necessary, as revised and re-notified from time to time). When the Arbitral Tribunal (not being a sole arbitrator) establishes a time for what it contemplates shall be the last submission from



the parties (whether written or oral), it shall set aside adequate time for deliberations as soon as possible after that last submission and notify the parties of the time it has set aside.

**Article 16        Seat(s) of Arbitration and Place(s) of Hearing**

16.1    The parties may agree in writing the seat (or legal place) of their arbitration at any time before the formation of the Arbitral Tribunal and, after such formation, with the prior written consent of the Arbitral Tribunal.

16.2     In default of any such agreement, the seat of the arbitration shall be the Dubai International Finance Centre, Dubai, unless and until the Arbitral Tribunal orders, in view of the circumstances and after having given the parties a reasonable opportunity to make written comments to the Arbitral Tribunal, that another arbitral seat is more appropriate. Such default seat shall not be considered as a relevant circumstance by the LCIA Court in appointing any arbitrators under Articles 5, 9A, 9B, 9C and 11.

16.3    The Arbitral Tribunal may hold any hearing at any convenient geographical place in consultation with the parties and hold its deliberations at any geographical place of its own choice; and if such place(s) should be elsewhere than the seat of the arbitration, the arbitration shall nonetheless be treated for all purposes as an arbitration conducted at the arbitral seat and any order or award as having been made at that seat.

16.4    The law applicable to the Arbitration Agreement and the arbitration shall be the law applicable at the seat of the arbitration, unless and to the extent that the parties have agreed in writing on the application of other laws or rules of law and such agreement is not prohibited by the law applicable at the arbitral seat.

**Article 17        Language(s) of Arbitration**

17.1    The initial language of the arbitration (until the formation of the Arbitral Tribunal) shall be the language or prevailing language of the Arbitration Agreement, unless the parties have agreed in writing otherwise.

17.2    In the event that the Arbitration Agreement is written in more than one language of equal standing, the LCIA Court may, unless the Arbitration Agreement provides that the arbitration proceedings shall be conducted from the outset in more than one language, determine which of those languages shall be the initial language of the arbitration.

17.3    A non-participating or defaulting party shall have no cause for complaint if communications to and from the LCIA Court and Registrar are conducted in the initial language(s) of the arbitration or of the arbitral seat.

17.4    Following the formation of the Arbitral Tribunal, unless the parties have agreed upon the language or languages of the arbitration, the Arbitral Tribunal shall decide upon the language(s) of the arbitration after giving the parties a reasonable opportunity to make written comments and taking into account the initial language(s) of the arbitration and any other matter it may consider appropriate in the circumstances.



17.5 If any document is expressed in a language other than the language(s) of the arbitration and no translation of such document is submitted by the party relying upon the document, the Arbitral Tribunal may order or (if the Arbitral Tribunal has not been formed) the Registrar may request that party to submit a translation of all or any part of that document in any language(s) of the arbitration or of the arbitral seat.

**Article 18        Legal Representatives**

18.1 Any party may be represented in the arbitration by one or more authorised legal representatives appearing by name before the Arbitral Tribunal.

18.2 Until the Arbitral Tribunal's formation, the Registrar may request from any party: (i) written proof of the authority granted by that party to any legal representative designated in its Request or Response; and (ii) written confirmation of the names and addresses of all such party's legal representatives in the arbitration. After its formation, at any time, the Arbitral Tribunal may order any party to provide similar proof or confirmation in any form it considers appropriate.

18.3 Following the Arbitral Tribunal's formation, any intended change or addition by a party to its legal representatives shall be notified promptly in writing to all other parties, the Arbitral Tribunal and the Registrar; and any such intended change or addition shall only take effect in the arbitration subject to the approval of the Arbitral Tribunal.

18.4 The Arbitral Tribunal may withhold approval of any intended change or addition to a party's legal representatives where such change or addition could compromise the composition of the Arbitral Tribunal or the finality of any award (on the grounds of possible conflict or other like impediment). In deciding whether to grant or withhold such approval, the Arbitral Tribunal shall have regard to the circumstances, including: the general principle that a party may be represented by a legal representative chosen by that party, the stage which the arbitration has reached, the efficiency resulting from maintaining the composition of the Arbitral Tribunal (as constituted throughout the arbitration) and any likely wasted costs or loss of time resulting from such change or addition.

18.5 Each party shall ensure that all its legal representatives appearing by name before the Arbitral Tribunal have agreed to comply with the general guidelines contained in the Annex to the DIFC-LCIA Rules, as a condition of such representation. In permitting any legal representative so to appear, a party shall thereby represent that the legal representative has agreed to such compliance.

18.6 In the event of a complaint by one party against another party's legal representative appearing by name before the Arbitral Tribunal (or of such complaint by the Arbitral Tribunal upon its own initiative), the Arbitral Tribunal may decide, after consulting the parties and granting that legal representative a reasonable opportunity to answer the complaint, whether or not the legal representative has violated the general guidelines. If such violation is found by the Arbitral Tribunal, the Arbitral Tribunal may order any or all of the following sanctions against the legal representative: (i) a written reprimand; (ii) a written caution as to future conduct in



the arbitration; and (iii) any other measure necessary to fulfil within the arbitration the general duties required of the Arbitral Tribunal under Articles 14.4(i) and (ii).

**Article 19      Oral Hearing(s)**

19.1   Any party has the right to a hearing before the Arbitral Tribunal on the parties' dispute at any appropriate stage of the arbitration (as decided by the Arbitral Tribunal), unless the parties have agreed in writing upon a documents-only arbitration. For this purpose, a hearing may consist of several part-hearings (as decided by the Arbitral Tribunal).

19.2   The Arbitral Tribunal shall organise the conduct of any hearing in advance, in consultation with the parties. The Arbitral Tribunal shall have the fullest authority under the Arbitration Agreement to establish the conduct of a hearing, including its date, form, content, procedure, time-limits and geographical place. As to form, a hearing may take place by video or telephone conference or in person (or a combination of all three). As to content, the Arbitral Tribunal may require the parties to address a list of specific questions or issues arising from the parties' dispute.

19.3   The Arbitral Tribunal shall give to the parties reasonable notice in writing of any hearing.

19.4   All hearings shall be held in private, unless the parties agree otherwise in writing.

**Article 20      Witness(es)**

20.1   Before any hearing, the Arbitral Tribunal may order any party to give written notice of the identity of each witness that party wishes to call (including rebuttal witnesses), as well as the subject-matter of that witness's testimony, its content and its relevance to the issues in the arbitration.

20.2   Subject to any order otherwise by the Arbitral Tribunal, the testimony of a witness may be presented by a party in written form, either as a signed statement or like document.

20.3   The Arbitral Tribunal may decide the time, manner and form in which these written materials shall be exchanged between the parties and presented to the Arbitral Tribunal; and it may allow, refuse or limit the written and oral testimony of witnesses (whether witnesses of fact or expert witnesses).

20.4   The Arbitral Tribunal and any party may request that a witness, on whose written testimony another party relies, should attend for oral questioning at a hearing before the Arbitral Tribunal. If the Arbitral Tribunal orders that other party to secure the attendance of that witness and the witness refuses or fails to attend the hearing without good cause, the Arbitral Tribunal may place such weight on the written testimony or exclude all or any part thereof altogether as it considers appropriate in the circumstances.

20.5   Subject to the mandatory provisions of any applicable law, rules of law and any order of the Arbitral Tribunal otherwise, it shall not be improper for any party or its legal representatives



to interview any potential witness for the purpose of presenting his or her testimony in written form to the Arbitral Tribunal or producing such person as an oral witness at any hearing.

20.6    Subject to any order by the Arbitral Tribunal otherwise, any individual intending to testify to the Arbitral Tribunal may be treated as a witness notwithstanding that the individual is a party to the arbitration or was, remains or has become an officer, employee, owner or shareholder of any party or is otherwise identified with any party.

20.7    Subject to the mandatory provisions of any applicable law, the Arbitral Tribunal shall be entitled (but not required) to administer any appropriate oath to any witness at any hearing, prior to the oral testimony of that witness.

20.8    Any witness who gives oral testimony at a hearing before the Arbitral Tribunal may be questioned by each of the parties under the control of the Arbitral Tribunal. The Arbitral Tribunal may put questions at any stage of such testimony.

**Article 21        Expert(s) to Arbitral Tribunal**

21.1    The Arbitral Tribunal, after consultation with the parties, may appoint one or more experts to report in writing to the Arbitral Tribunal and the parties on specific issues in the arbitration, as identified by the Arbitral Tribunal.

21.2    Any such expert shall be and remain impartial and independent of the parties; and he or she shall sign a written declaration to such effect, delivered to the Arbitral Tribunal and copied to all parties.

21.3    The Arbitral Tribunal may require any party at any time to give to such expert any relevant information or to provide access to any relevant documents, goods, samples, property, site or thing for inspection under that party's control on such terms as the Arbitral Tribunal thinks appropriate in the circumstances.

21.4    If any party so requests or the Arbitral Tribunal considers it necessary, the Arbitral Tribunal may order the expert, after delivery of the expert's written report, to participate in a hearing at which the parties shall have a reasonable opportunity to question the expert on the report and to present witnesses in order to testify on relevant issues arising from the report.

21.5    The fees and expenses of any expert appointed by the Arbitral Tribunal under this Article 21 may be paid out of the deposits payable by the parties under Article 24 and shall form part of the Arbitration Costs under Article 28.

**Article 22        Additional Powers**

22.1    The Arbitral Tribunal shall have the power, upon the application of any party or (save for sub-paragraphs (viii), (ix) and (x) below) upon its own initiative, but in either case only after giving the parties a reasonable opportunity to state their views and upon such terms (as to costs and otherwise) as the Arbitral Tribunal may decide:



(i)  to allow a party to supplement, modify or amend any claim, defence, cross-claim, defence to cross-claim and reply, including a Request, Response and any other written statement, submitted by such party;

(ii)  to abridge or extend (even where the period of time has expired) any period of time prescribed under the Arbitration Agreement, any other agreement of the parties or any order made by the Arbitral Tribunal;

(iii)  to conduct such enquiries as may appear to the Arbitral Tribunal to be necessary or expedient, including whether and to what extent the Arbitral Tribunal should itself take the initiative in identifying relevant issues and ascertaining relevant facts and the law(s) or rules of law applicable to the Arbitration Agreement, the arbitration and the merits of the parties' dispute;

(iv)  to order any party to make any documents, goods, samples, property, site or thing under its control available for inspection by the Arbitral Tribunal, any other party, any expert to such party and any expert to the Tribunal;

(v)  to order any party to produce to the Arbitral Tribunal and to other parties documents or copies of documents in their possession, custody or power which the Arbitral Tribunal decides to be relevant;

(vi)  to decide whether or not to apply any strict rules of evidence (or any other rules) as to the admissibility, relevance or weight of any material tendered by a party on any issue of fact or expert opinion; and to decide the time, manner and form in which such material should be exchanged between the parties and presented to the Arbitral Tribunal;

(vii)  to order compliance with any legal obligation, payment of compensation for breach of any legal obligation and specific performance of any agreement (including any arbitration agreement or any contract relating to land);

(viii)  to allow one or more third persons to be joined in the arbitration as a party provided any such third person and the applicant party have consented to such joinder in writing following the Commencement Date or (if earlier) in the Arbitration Agreement; and thereafter to make a single final award, or separate awards, in respect of all parties so implicated in the arbitration;

(ix)  to order, with the approval of the LCIA Court, the consolidation of the arbitration with one or more other arbitrations into a single arbitration subject to the DIFC-LCIA Rules where all the parties to the arbitrations to be consolidated so agree in writing;

(x)  to order, with the approval of the LCIA Court, the consolidation of the arbitration with one or more other arbitrations subject to the DIFC-LCIA Rules commenced under the same arbitration agreement or any compatible arbitration agreement(s) between the same disputing parties, provided that no arbitral tribunal has yet been formed by the LCIA Court for such other arbitration(s) or, if already formed, that such tribunal(s) is(are) composed of the same arbitrators; and



(xi)    to order the discontinuance of the arbitration if it appears to the Arbitral Tribunal that the arbitration has been abandoned by the parties or all claims and any cross-claims withdrawn by the parties, provided that, after fixing a reasonable period of time within which the parties shall be invited to agree or to object to such discontinuance, no party has stated its written objection to the Arbitral Tribunal to such discontinuance upon the expiry of such period of time.

22.2    By agreeing to arbitration under the Arbitration Agreement, the parties shall be treated as having agreed not to apply to any state court or other legal authority for any order available from the Arbitral Tribunal (if formed) under Article 22.1, except with the agreement in writing of all parties.

22.3    The Arbitral Tribunal shall decide the parties' dispute in accordance with the law(s) or rules of law chosen by the parties as applicable to the merits of their dispute. If and to the extent that the Arbitral Tribunal decides that the parties have made no such choice, the Arbitral Tribunal shall apply the law(s) or rules of law which it considers appropriate.

22.4    The Arbitral Tribunal shall only apply to the merits of the dispute principles deriving from "ex aequo et bono", "amiable composition" or "honourable engagement" where the parties have so agreed in writing.

22.5    Subject to any order of the Arbitral Tribunal under Article 22.1(ii), the LCIA Court may also abridge or extend any period of time under the Arbitration Agreement or other agreement of the parties (even where the period of time has expired).

22.6    Without prejudice to the generality of Articles 22.1(ix) and (x), the LCIA Court may determine, after giving the parties a reasonable opportunity to state their views, that two or more arbitrations, subject to the DIFC-LCIA Rules and commenced under the same arbitration agreement between the same disputing parties, shall be consolidated to form one single arbitration subject to the DIFC-LCIA Rules, provided that no arbitral tribunal has yet been formed by the LCIA Court for any of the arbitrations to be consolidated.

**Article 23        Jurisdiction and Authority**

23.1    The Arbitral Tribunal shall have the power to rule upon its own jurisdiction and authority, including any objection to the initial or continuing existence, validity, effectiveness or scope of the Arbitration Agreement.

23.2    For that purpose, an arbitration clause which forms or was intended to form part of another agreement shall be treated as an arbitration agreement independent of that other agreement. A decision by the Arbitral Tribunal that such other agreement is non-existent, invalid or ineffective shall not entail (of itself) the non-existence, invalidity or ineffectiveness of the arbitration clause.

23.3    An objection by a Respondent that the Arbitral Tribunal does not have jurisdiction shall be raised as soon as possible but not later than the time for its Statement of Defence; and a like



objection by any party responding to a cross-claiming party shall be raised as soon as possible but not later than the time for its Statement of Defence to Cross-claim. An objection that the Arbitral Tribunal is exceeding the scope of its authority shall be raised promptly after the Arbitral Tribunal has indicated its intention to act upon the matter alleged to lie beyond its authority. The Arbitral Tribunal may nevertheless admit an untimely objection as to its jurisdiction or authority if it considers the delay justified in the circumstances.

23.4    The Arbitral Tribunal may decide the objection to its jurisdiction or authority in an award as to jurisdiction or authority or later in an award on the merits, as it considers appropriate in the circumstances.

23.5    By agreeing to arbitration under the Arbitration Agreement, after the formation of the Arbitral Tribunal the parties shall be treated as having agreed not to apply to any state court or other legal authority for any relief regarding the Arbitral Tribunal's jurisdiction or authority, except (i) with the prior agreement in writing of all parties to the arbitration, or (ii) the prior authorisation of the Arbitral Tribunal, or (iii) following the latter's award on the objection to its jurisdiction or authority.

**Article 24        Deposits**

24.1    The LCIA Court may, through the Registrar, direct the parties, in such proportions and at such times as it thinks appropriate, to make one or more payments to the DIFC-LCIA Arbitration Centre on account of the Arbitration Costs. Such payments deposited by the parties may be applied by the LCIA Court to pay any item of such Arbitration Costs (including the DIFC-LCIA Arbitration Centre's own fees and expenses) in accordance with the DIFC-LCIA Rules.

24.2    All payments made by parties on account of the Arbitration Costs shall be held by the DIFC-LCIA Arbitration Centre, to be disbursed or otherwise applied by the DIFC-LCIA Arbitration Centre in accordance with the DIFC-LCIA Rules. In the event that payments exceed the total amount of the Arbitration Costs at the conclusion of the arbitration, the excess amount shall be returned by the DIFC-LCIA Arbitration Centre to the parties.

24.3    Save for exceptional circumstances, the Arbitral Tribunal should not proceed with the arbitration without having ascertained from the Registrar that the DIFC-LCIA Arbitration Centre is or will be in requisite funds as regards outstanding and future Arbitration Costs.

24.4    In the event that a party fails or refuses to make any payment on account of the Arbitration Costs as directed by the LCIA Court, through the Registrar, the LCIA Court may, through the Registrar direct the other party or parties to effect a substitute payment to allow the arbitration to proceed (subject to any order or award on Arbitration Costs).

24.5    In such circumstances, the party effecting the substitute payment may request the Arbitral Tribunal to make an order or award in order to recover that amount as a debt immediately due and payable to that party by the defaulting party.



24.6    Failure by a claiming or cross-claiming party to make promptly and in full any required payment on account of Arbitration Costs may be treated by the Arbitral Tribunal as a withdrawal from the arbitration of the claim or cross-claim respectively, thereby removing such claim or cross-claim (as the case may be) from the scope of the Arbitral Tribunal's jurisdiction under the Arbitration Agreement, subject to any terms decided by the Arbitral Tribunal as to the reinstatement of the claim or cross-claim in the event of subsequent payment by the claiming or cross-claiming party. Such a withdrawal shall not preclude the claiming or cross-claiming party from defending as a respondent any claim or cross-claim made by another party.

**Article 25        Interim and Conservatory Measures**

25.1    The Arbitral Tribunal shall have the power upon the application of any party, after giving all other parties a reasonable opportunity to respond to such application and upon such terms as the Arbitral Tribunal considers appropriate in the circumstances:

(i)    to order any respondent party to a claim or cross-claim to provide security for all or part of the amount in dispute, by way of deposit or bank guarantee or in any other manner;

(ii)    to order the preservation, storage, sale or other disposal of any documents, goods, samples, property, site or thing under the control of any party and relating to the subject-matter of the arbitration; and

(iii)    to order on a provisional basis, subject to a final decision in an award, any relief which the Arbitral Tribunal would have power to grant in an award, including the payment of money or the disposition of property as between any parties.

Such terms may include the provision by the applicant party of a cross-indemnity, secured in such manner as the Arbitral Tribunal considers appropriate, for any costs or losses incurred by the respondent party in complying with the Arbitral Tribunal's order. Any amount payable under such cross-indemnity and any consequential relief may be decided by the Arbitral Tribunal by one or more awards in the arbitration.

25.2    The Arbitral Tribunal shall have the power upon the application of a party, after giving all other parties a reasonable opportunity to respond to such application, to order any claiming or cross-claiming party to provide or procure security for Legal Costs and Arbitration Costs by way of deposit or bank guarantee or in any other manner and upon such terms as the Arbitral Tribunal considers appropriate in the circumstances. Such terms may include the provision by that other party of a cross-indemnity, itself secured in such manner as the Arbitral Tribunal considers appropriate, for any costs and losses incurred by such claimant or cross-claimant in complying with the Arbitral Tribunal's order. Any amount payable under such cross-indemnity and any consequential relief may be decided by the Arbitral Tribunal by one or more awards in the arbitration. In the event that a claiming or cross-claiming party does not comply with any order to provide security, the Arbitral Tribunal may stay that party's claims or cross-claims or dismiss them by an award.



25.3    The power of the Arbitral Tribunal under Article 25.1 shall not prejudice any party's right to apply to a state court or other legal authority for interim or conservatory measures to similar effect: (i) before the formation of the Arbitral Tribunal; and (ii) after the formation of the Arbitral Tribunal, in exceptional cases and with the Arbitral Tribunal's authorisation, until the final award. After the Commencement Date, any application and any order for such measures before the formation of the Arbitral Tribunal shall be communicated promptly in writing by the applicant party to the Registrar; after its formation, also to the Arbitral Tribunal; and in both cases also to all other parties.

25.4.    By agreeing to arbitration under the Arbitration Agreement, the parties shall be taken to have agreed not to apply to any state court or other legal authority for any order for security for Legal Costs or Arbitration Costs.

**Article 26        Award(s)**

26.1    The Arbitral Tribunal may make separate awards on different issues at different times, including interim payments on account of any claim or cross-claim (including Legal and Arbitration Costs). Such awards shall have the same status as any other award made by the Arbitral Tribunal.

26.2    The Arbitral Tribunal shall make any award in writing and, unless all parties agree in writing otherwise, shall state the reasons upon which such award is based. The award shall also state the date when the award is made and the seat of the arbitration; and it shall be signed by the Arbitral Tribunal or those of its members assenting to it.

26.3    An award may be expressed in any currency, unless the parties have agreed otherwise.

26.4    Unless the parties have agreed otherwise, the Arbitral Tribunal may order that simple or compound interest shall be paid by any party on any sum awarded at such rates as the Arbitral Tribunal decides to be appropriate (without being bound by rates of interest practised by any state court or other legal authority) in respect of any period which the Arbitral Tribunal decides to be appropriate ending not later than the date upon which the award is complied with.

26.5    Where there is more than one arbitrator and the Arbitral Tribunal fails to agree on any issue, the arbitrators shall decide that issue by a majority. Failing a majority decision on any issue, the presiding arbitrator shall decide that issue.

26.6    If any arbitrator refuses or fails to sign the award, the signatures of the majority or (failing a majority) of the presiding arbitrator shall be sufficient, provided that the reason for the omitted signature is stated in the award by the majority or by the presiding arbitrator.

26.7    The sole or presiding arbitrator shall be responsible for delivering the award to the LCIA Court, through the Registrar, who shall transmit to the parties the award authenticated by the Registrar as an DIFC-LCIA Arbitration Centre award, provided that all Arbitration Costs have been paid in full to the DIFC-LCIA Arbitration Centre in accordance with Articles 24 and 28.



Such transmission may be made by any electronic means, in addition to paper form (if so requested by any party). In the event of any disparity between electronic and paper forms, the paper form shall prevail.

26.8    Every award (including reasons for such award) shall be final and binding on the parties. The parties undertake to carry out any award immediately and without any delay (subject only to Article 27); and the parties also waive irrevocably their right to any form of appeal, review or recourse to any state court or other legal authority, insofar as such waiver shall not be prohibited under any applicable law.

26.9    In the event of any final settlement of the parties' dispute, the Arbitral Tribunal may decide to make an award recording the settlement if the parties jointly so request in writing (a "Consent Award"), provided always that such Consent Award shall contain an express statement on its face that it is an award made at the parties' joint request and with their consent. A Consent Award need not contain reasons. If the parties do not jointly request a Consent Award, on written confirmation by the parties to the LCIA Court that a final settlement has been reached, the Arbitral Tribunal shall be discharged and the arbitration proceedings concluded by the LCIA Court, subject to payment by the parties of any outstanding Arbitration Costs in accordance with Articles 24 and 28.

**Article 27        Correction of Award(s) and Additional Award(s)**

27.1    Within 28 days of receipt of any award, a party may by written notice to the Registrar (copied to all other parties) request the Arbitral Tribunal to correct in the award any error in computation, any clerical or typographical error, any ambiguity or any mistake of a similar nature. If the Arbitral Tribunal considers the request to be justified, after consulting the parties, it shall make the correction within 28 days of receipt of the request. Any correction shall take the form of a memorandum by the Arbitral Tribunal.

27.2    The Arbitral Tribunal may also correct any error (including any error in computation, any clerical or typographical error or any error of a similar nature) upon its own initiative in the form of a memorandum within 28 days of the date of the award, after consulting the parties.

27.3    Within 28 days of receipt of the final award, a party may by written notice to the Registrar (copied to all other parties), request the Arbitral Tribunal to make an additional award as to any claim or cross-claim presented in the arbitration but not decided in any award. If the Arbitral Tribunal considers the request to be justified, after consulting the parties, it shall make the additional award within 56 days of receipt of the request.

27.4    As to any claim or cross-claim presented in the arbitration but not decided in any award, the Arbitral Tribunal may also make an additional award upon its own initiative within 28 days of the date of the award, after consulting the parties.

27.5    The provisions of Article 26.2 to 26.7 shall apply to any memorandum or additional award made hereunder. A memorandum shall be treated as part of the award.



**Article 28        Arbitration Costs and Legal Costs**

28.1    The costs of the arbitration other than the legal or other expenses incurred by the parties themselves (the "Arbitration Costs") shall be determined by the LCIA Court in accordance with the Schedule of Costs. The parties shall be jointly and severally liable to the DIFC-LCIA Arbitration Centre and the Arbitral Tribunal for such Arbitration Costs.

28.2    The Arbitral Tribunal shall specify by an award the amount of the Arbitration Costs determined by the LCIA Court. The Arbitral Tribunal shall decide the proportions in which the parties shall bear such Arbitration Costs (in the absence of a final settlement of the parties' dispute regarding liability for such costs). If the Arbitral Tribunal has decided that all or any part of the Arbitration Costs shall be borne by a party other than a party which has already covered such costs by way of a payment to the DIFC-LCIA Arbitration Centre under Article 24, the latter party shall have the right to recover the appropriate amount of Arbitration Costs from the former party.

28.3    The Arbitral Tribunal shall also have the power to decide by an award that all or part of the legal or other expenses incurred by a party (the "Legal Costs") be paid by another party. The Arbitral Tribunal shall decide the amount of such Legal Costs on such reasonable basis as it thinks appropriate. The Arbitral Tribunal shall not be required to apply the rates or procedures for assessing such costs practised by any state court or other legal authority.

28.4    The Arbitral Tribunal shall make its decisions on both Arbitration Costs and Legal Costs on the general principle that costs should reflect the parties' relative success and failure in the award or arbitration or under different issues, except where it appears to the Arbitral Tribunal that in the circumstances the application of such a general principle would be inappropriate under the Arbitration Agreement or otherwise. The Arbitral Tribunal may also take into account the parties' conduct in the arbitration, including any co-operation in facilitating the proceedings as to time and cost and any non-co-operation resulting in undue delay and unnecessary expense. Any decision on costs by the Arbitral Tribunal shall be made with reasons in the award containing such decision.

28.5    In the event that the parties have howsoever agreed before their dispute that one or more parties shall pay the whole or any part of the Arbitration Costs or Legal Costs whatever the result of any dispute, arbitration or award, such agreement (in order to be effective) shall be confirmed by the parties in writing after the Commencement Date.

28.6    If the arbitration is abandoned, suspended, withdrawn or concluded, by agreement or otherwise, before the final award is made, the parties shall remain jointly and severally liable to pay to the DIFC-LCIA Arbitration Centre and the Arbitral Tribunal the Arbitration Costs determined by the LCIA Court.

28.7    In the event that the Arbitration Costs are less than the deposits received by the DIFC-LCIA Arbitration Centre under Article 24, there shall be a refund by the DIFC-LCIA Arbitration Centre to the parties in such proportions as the parties may agree in writing, or failing such



agreement, in the same proportions and to the same payers as the deposits were paid to the DIFC-LCIA Arbitration Centre.

**Article 29        Determinations and Decisions by LCIA Court**

29.1    The determinations of the LCIA Court with respect to all matters relating to the arbitration shall be conclusive and binding upon the parties and the Arbitral Tribunal, unless otherwise directed by the LCIA Court. Save for reasoned decisions on arbitral challenges under Article 10, such determinations are to be treated as administrative in nature; and the LCIA Court shall not be required to give reasons for any such determination.

29.2    To the extent permitted by any applicable law, the parties shall be taken to have waived any right of appeal or review in respect of any determination and decision of the LCIA Court to any state court or other legal authority. If such appeal or review takes place due to mandatory provisions of any applicable law or otherwise, the LCIA Court may determine whether or not the arbitration should continue, notwithstanding such appeal or review.

**Article 30        Confidentiality**

30.1    The parties undertake as a general principle to keep confidential all awards in the arbitration, together with all materials in the arbitration created for the purpose of the arbitration and all other documents produced by another party in the proceedings not otherwise in the public domain, save and to the extent that disclosure may be required of a party by legal duty, to protect or pursue a legal right, or to enforce or challenge an award in legal proceedings before a state court or other legal authority.

30.2    The deliberations of the Arbitral Tribunal shall remain confidential to its members, save as required by any applicable law and to the extent that disclosure of an arbitrator's refusal to participate in the arbitration is required of the other members of the Arbitral Tribunal under Articles 10, 12, 26 and 27.

30.3    The DIFC-LCIA Arbitration Centre does not publish any award or any part of an award without the prior written consent of all parties and the Arbitral Tribunal.

**Article 31        Limitation of Liability**

31.1    None of the LCIA (including its officers, members and employees), the DIFC-LCIA Arbitration Centre, the LCIA Court (including its President, Vice-Presidents, Honourary Vice-Presidents and members), the Registrar (including any deputy Registrar), any arbitrator, any Emergency Arbitrator and any expert to the Arbitral Tribunal shall be liable to any party howsoever for any act or omission in connection with any arbitration, save: (i) where the act or omission is shown by that party to constitute conscious and deliberate wrongdoing committed by the body or person alleged to be liable to that party; or (ii) to the extent that any part of this provision is shown to be prohibited by any applicable law.

31.2    After the award has been made and all possibilities of any memorandum or additional award under Article 27 have lapsed or been exhausted, neither the LCIA (including its officers,



members and employees), the DIFC-LCIA Arbitration Centre, the LCIA Court (including its President, Vice-Presidents, Honourary Vice-Presidents and members), the Registrar (including any deputy Registrar), any arbitrator, any Emergency Arbitrator or any expert to the Arbitral Tribunal shall be under any legal obligation to make any statement to any person about any matter concerning the arbitration; nor shall any party seek to make any of these bodies or persons a witness in any legal or other proceedings arising out of the arbitration.

**Article 32        General Rules**

32.1    A party who knows that any provision of the Arbitration Agreement has not been complied with and yet proceeds with the arbitration without promptly stating its objection as to such non-compliance to the Registrar (before the formation of the Arbitral Tribunal) or the Arbitral Tribunal (after its formation), shall be treated as having irrevocably waived its right to object for all purposes.

32.2    For all matters not expressly provided in the Arbitration Agreement, the LCIA Court, the DIFC-LCIA Arbitration Centre, the Registrar, the Arbitral Tribunal and each of the parties shall act at all times in good faith, respecting the spirit of the Arbitration Agreement, and shall make every reasonable effort to ensure that any award is legally recognised and enforceable at the arbitral seat.

32.3    If and to the extent that any part of the Arbitration Agreement is decided by the Arbitral Tribunal, the Emergency Arbitrator, or any court or other legal authority of competent jurisdiction to be invalid, ineffective or unenforceable, such decision shall not, of itself, adversely affect any order or award by the Arbitral Tribunal or the Emergency Arbitrator or any other part of the Arbitration Agreement which shall remain in full force and effect, unless prohibited by any applicable law.

32.4    The LCIA Court may decide to administer any arbitration directly, in whole or in part, if it deems this appropriate under the circumstances.



*Index (in alphabetical order)*

| | |
|---|---|
| *Arbitral Tribunal:* | *see Article 5.2;* |
| *Arbitration Agreement:* | *see Preamble;* |
| *Arbitration Costs:* | *see Article 28.1;* |
| *Claimant:* | *see Articles 1.1 & 1.5;* |
| *Commencement Date:* | *see Article 1.4;* |
| *Consent Award:* | *see Article 26.9;* |
| *Cross-claim:* | *see Article 2.1(iii);* |
| *Emergency Arbitrator:* | *see Articles 5.2 & 9.4;* |
| *LCIA Court:* | *see Article 3.1;* |
| *DIFC-LCIA Rules:* | *See Preamble;* |
| *Legal Costs:* | *see Article 28.3;* |
| *Legal Representatives:* | *see Articles 1.1(i); 2.1(i), 18.1, 18.3 & 18.4;* |
| *Registrar:* | *see Articles 1.1 & 3.2;* |
| *Request:* | *see Article 1.1;* |
| *Respondent:* | *see Articles 1.1(iii) & 2.5;* |
| *Response:* | *see Article 2.1;* |
| *Special Fee:* | *see Article 9.5;* |
| *Statement of Case* | *see Article 15.2;* |
| *Statement of Defence* | *see Article 15.3;* |
| *Statement of Cross-claim* | *see Article 15.3;* |
| *Statement of Defence to Cross-claim* | *see Article 15.4; and* |
| *Statement of Reply* | *see Article 15.4.* |

*(N.B. This Index comprises both defined and other undefined terms. All references to any person or party include both masculine and feminine).*



*ANNEX TO THE DIFC-LCIA RULES*
*General Guidelines for the Parties' Legal Representatives*
*(Articles 18.5 and 18.6 of the DIFC-LCIA Rules)*

*Paragraph 1*: These general guidelines are intended to promote the good and equal conduct of the parties' legal representatives appearing by name within the arbitration. Nothing in these guidelines is intended to derogate from the Arbitration Agreement or to undermine any legal representative's primary duty of loyalty to the party represented in the arbitration or the obligation to present that party's case effectively to the Arbitral Tribunal. Nor shall these guidelines derogate from any mandatory laws, rules of law, professional rules or codes of conduct if and to the extent that any are shown to apply to a legal representative appearing in the arbitration.

*Paragraph 2:* A legal representative should not engage in activities intended unfairly to obstruct the arbitration or to jeopardise the finality of any award, including repeated challenges to an arbitrator's appointment or to the jurisdiction or authority of the Arbitral Tribunal known to be unfounded by that legal representative.

*Paragraph 3*: A legal representative should not knowingly make any false statement to the Arbitral Tribunal or the LCIA Court.

*Paragraph 4*: A legal representative should not knowingly procure or assist in the preparation of or rely upon any false evidence presented to the Arbitral Tribunal or the LCIA Court.

*Paragraph 5*: A legal representative should not knowingly conceal or assist in the concealment of any document (or any part thereof) which is ordered to be produced by the Arbitral Tribunal.

*Paragraph 6*: During the arbitration proceedings, a legal representative should not deliberately initiate or attempt to initiate with any member of the Arbitral Tribunal or with any member of the LCIA Court making any determination or decision in regard to the arbitration (but not including the Registrar) any unilateral contact relating to the arbitration or the parties' dispute, which has not been disclosed in writing prior to or shortly after the time of such contact to all other parties, all members of the Arbitral Tribunal (if comprised of more than one arbitrator) and the Registrar in accordance with Article 13.4.

*Paragraph 7*: In accordance with Articles 18.5 and 18.6, the Arbitral Tribunal may decide whether a legal representative has violated these general guidelines and, if so, how to exercise its discretion to impose any or all of the sanctions listed in Article 18.6.